FILED
2015 Aug-27  AM 09:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| APRIL D. CHANDLER, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action Number** |
| | ) | **3:12-cv-3701-AKK** |
| VOLUNTEERS OF AMERICA, | ) | |
| SOUTHEAST, INC., et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Plaintiff April D. Chandler, an African-American, claims that her former employers, Volunteers of America, North Alabama, Inc. ("VOANA") and Volunteers of America, Southeast, Inc. ("VOASE") (collectively "Defendants") subjected her to a racially hostile work environment and race discrimination, and retaliated against her based on her complaints of discrimination, in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Doc. 28. Defendants now move for summary judgment. Doc. 121. For the reasons below, the court will grant summary judgment as to all claims against VOANA, and as to the hostile work environment and race discrimination claims against VOASE (Counts I, II, III, IV and V). The court will

deny summary judgment as to the Section 1981 and Title VII retaliation claims against VOASE (Count VI).[1]

# I. STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." To support a summary judgment motion, the parties must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c). Moreover, "Rule 56(c) mandates the entry of

---

[1] The court also has before it several other motions accompanying the summary judgment motion. First, both Chandler and Defendants move to strike certain portions of the opposing parties' evidentiary submissions. In particular, Defendants move to strike portions of the declarations of Chandler (docs. 140-9, 140-17), Latina Fuqua (doc. 140-2), and Amy Armstead (doc. 140-1), upon which Chandler relies in her response to the summary judgment motion. Doc. 144. The court **DENIES** this motion because the statements at issue ultimately do not change the court's analysis. Chandler moves to strike the declaration of Valerie Acklin (doc. 123-3), which the court **DENIES** because the court will not rely on Acklin's declaration. Docs. 129, 131, 132.

Next, counsel for Chandler filed a motion requesting permission from the court to file documents from a different case (which are governed by a protective order). Doc. 130. The documents are seemingly related to Chandler's motion to strike Acklin's declaration. The court **DENIES** the motion because it finds no indication that the documents are relevant or necessary to address Chandler's claims.

Chandler also moved the court to strike Defendants' reply brief and motion to strike (docs. 143, 144) for an alleged "blatant failure to abide by the court's Scheduling Order." Doc. 147 at 4. Because the court has reviewed the documents and finds no violation of its orders, the motion is **DENIED**.

Eight days after Defendants filed their reply in support of their summary judgment motion, Chandler moved for leave to amend her April 15, 2015 declaration (doc. 140-9), which accompanied her April 15, 2015 response to the summary judgment motion. Doc. 154. The amended declaration (doc. 154-2) includes amended citations to documents that Chandler is relying on in offering her declaration. The amended declaration also adds new substantive information. Chandler claims that she signed both declarations on April 15, 2015, but her counsel inadvertently filed the wrong declaration. Docs. 154 at 2, 154-1 at 1. The court **DENIES** the motion as untimely because Chandler is attempting to refile evidentiary submissions well after her response deadline and with the benefit of having seen Defendants' reply. The court **STRIKES** "Exhibit 1" to Chandler's motion (doc. 154-2). Nonetheless, the court reviewed the stricken amended declaration to satisfy itself that nothing in it would justify a different result in this case.

Finally, the court **GRANTS** Chandler's motion for leave to file a surreply, doc. 156, although the surreply has no impact on the court's decision.

summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing

that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. FACTUAL AND PROCEDURAL BACKGROUND

In 2005, Chandler began working as a House Manager with VOANA, a Christian human-services organization that provided home care for developmentally challenged individuals around Florence, Alabama until it ceased operating on December 31, 2010. Docs. 123-5 at 2; 123-4 at 2. As VOANA ceased its operations, it gave its employees the option of accepting employment with VOASE, which provides the same services as VOANA, and which was scheduled to take over VOANA's operations in Florence. Doc. 123-4 at 3. Chandler accepted employment with VOASE and began working there as a House Manager on January 1, 2011. *Id*. at 4. A few months later, on May 4, 2011, VOASE discharged Chandler for insubordination, intimidating other employees, and "misrepresenting material facts to employees." *Id*. at 32.

### A. Allegations while Chandler worked at VOANA

This action is Chandler's second lawsuit for alleged unlawful employment practices she experienced at VOANA. On November 2, 2010, Chandler initiated *Chandler v. Volunteers of Am., N. Alabama, Inc.*, No. 14-10050, 2015 WL 329596, at *6 (11th Cir. Jan. 27, 2015) (hereinafter *Chandler I*) and brought claims of race discrimination, harassment, and retaliation based on the actions of Chandler's

direct supervisors (Teresa Stephenson and Nicole Jones). In the present action, Chandler again brings claims against VOANA based upon the actions of Stephenson and Jones. Doc. 28. The court ruled on Defendants' motion to dismiss in this case on May 19, 2014. Doc. 53. Based on res judicata principles and the applicable time limitations for challenging allegedly unlawful employment actions, the court limited Chandler's hostile work environment claims (under both Section 1981 and Title VII) and her Section 1981 discrimination and retaliation claims to allegedly unlawful actions occurring after November 2, 2010 (i.e., after Chandler initiated the *Chandler I* litigation), and her Title VII discrimination and retaliation claims to actions occurring after January 1, 2011 (i.e., after Chandler joined VOASE). [2] Doc. 53 at 2.

Relevant to the Section 1981 discrimination and retaliation claims for employment actions at VOANA from November 2, 2010 until December 31, 2010, counsel for Defendants asked Chandler at her deposition whether there is "any type of discipline or adverse employment action that [she] contends Ms. Jones or [VOANA] imposed on [her] that [she] didn't raise in [*Chandler I*]," and Chandler responded, "No." Doc. 123-1 at 14. Along the same lines, while Chandler's current Section 1981 and Title VII hostile work environment claims for employment actions at VOANA are based in part on the allegation that "the racially hostile

---

[2] In ruling on Defendants' motion to dismiss in the present case, the court considered VOANA and VOASE "as essentially the same party for purposes of th[at] opinion only." Doc. 53 at 7 n. 3.

work environment . . . continued on from November 2, 2010 through December 31, 2010" at VOANA, *see* doc. 140-9 at 28, Chandler explained during her deposition that the person who created a hostile work environment for her "from the time period of August [3], 2005 up until January 1, 2011, [was] . . . Teresa Stephenson," doc. 123-1 at 45. Significantly, it is undisputed that Teresa Stephenson resigned from VOANA in March 2010 and was not present to create any hostile work environment for Chandler during the relevant time period (i.e., after November 2, 2010). Doc. 140-1 at 1.

Apparently, however, Jones allegedly continued to create a hostile work environment for Chandler after Stephenson resigned, and Jones's behavior "trickled on beyond [Chandler's] first case," (i.e, *Chandler I*). Doc. 123-1 at 6; *see* doc. 140-9 at 2-3. Specifically, Chandler added in her post-deposition declaration—which she submitted in opposing the motion for summary judgment—that Jones "would unload verbal and visual racial abuse against [Chandler] constantly and on almost a daily, if not daily, basis" while Chandler worked at VOANA and after Stephenson resigned. Doc. 140-9 at 3. In particular, Chandler explains that although Jones never used any racial slurs, doc. 123-1 at 8, Jones purportedly talked down to Chandler and used "code words like 'back-talking,' 'boss,' and 'attitude' to refer to black employees," doc. 140-9 at 2. Chandler adds that she "knew that [Jones] meant 'nigger' when she used those

words," and "Jones's tone of voice and the facial expressions she made when talking to black employees was a tone of and were expressions of disgust." *Id*. at 3. Jones also allegedly "kept hand sanitizer on hand . . . so [that] if she came in contact with any of the [African-American] clients or employees, she used her hand sanitizer." Doc. 123-1 at 8. Chandler explains that Jones's alleged harassment was many times "so bad [that Chandler] would just go somewhere and cry." Doc. 140-9 at 3. Chandler claims that she complained about these incidences to the Human Resources department (including Kimberly O'Neal) "on numerous occasions from the time [Chandler] was employed [at VOANA] up until [Chandler] left [VOASE] . . . in 2011." Doc. 123-1 at 4-5. While O'Neal denies receiving any complaints from Chandler from November 2, 2010 until January 1, 2011, doc. 123-5 at 2, Chandler asserts that she indeed complained to O'Neal during this time period, doc. 140-9 at 9.

### B. Allegations while Chandler worked at VOASE

Chandler believes that Jones and Susan Manno (Chandler's supervisors at VOASE), Brenda Calvert (Regional Services Director for VOASE's Florence office), and Deanna Ferguson (VOASE's Vice President of Services for Alabama, Georgia, and Mississippi) discriminated, harassed, and retaliated against her. Doc. 140-9 at 21. Allegedly, Jones, Manno, and Ferguson discharged Chandler in retaliation for her complaints of unlawful employment practices. *See id*. at 25-26.

As grounds for Chandler's termination, Manno and Ferguson cited to incidences of insubordination, intimidation of coworkers, and misrepresentation of material facts. Doc. 123-4 at 32. The court will begin by recounting Chandler and Jones's interactions at VOASE since one of their verbal altercations—at the April 15, 2011 "CORE" team meeting—was seemingly the starting point for the events that led to Chandler's discharge.

### 1. Jones's alleged harassment and the April 15, 2011 CORE team meeting

Once Chandler joined VOASE on January 1, 2011, Jones purportedly continued to use the same "code words," tone of voice, and facial expressions that signified "disgust" toward Chandler and other black employees. *See* doc. 140-9 at 5. Chandler contends that Jones's behavior occurred on "almost a daily, if not daily, basis."[3] *Id.* While the parties agree that Jones no longer supervised Chandler after March 2011, Chandler and Jones apparently continued to interact regularly at VOASE—including during the April 15, 2011 "CORE" team meeting, where Jones and Chandler had a verbal altercation which led to Jones receiving a written reprimand, and which was part of the reason for Chandler's discharge. *See* doc. 123-1 at 17. Jones called the CORE team meeting to address concerns about one of VOASE's clients. Doc. 123-4 at 19. In attendance were Chandler, Jones, Manno,

---

[3] According to Defendants, Jones rarely interacted with Chandler after January 18, 2011 because Jones was on maternity leave from January 18, 2011 until March 2011. Doc. 123-5 at 4. During her maternity leave, Jones was on leave for the first four weeks, and then worked from home until office sometime in March 2011. *Id.* Chandler, however, explains that "while [Jones] was on maternity leave, she continued to come to [VOASE] to do her work," and "Jones would make work calls from her home while she was on maternity leave." Doc. 140-9 at 10. Chandler maintains that she continued to see Jones "almost every day, if not every day." *Id.*

Calvert (by phone), Valerie Acklin (a nurse practitioner at VOASE), Cassandra Hall (another supervisor), a family member of the client, and other VOASE employees. *Id*. at 15. According to Jones, Hall, and Manno, Chandler disagreed with Jones on an issue related to the client's care and the two argued with one another in an unprofessional manner. *See* doc. 123-5 at 13-14. Chandler purportedly was at one point "very rude" to Calvert. Doc. 123-4 at 17. According to Manno, Chandler was "very loud and argumentative," and Jones told Chandler "that she doesn't want to hear anymore of 'this kind of talk'" and stood up and left the room to diffuse the situation. *Id*. at 19. Chandler generally denies that she argued with Jones or Calvert or raised her voice, but she explains that Jones nonetheless "stormed out of the room" saying, "April Chandler, I've had all I can take of you and I'm going to do everything I can to get you in trouble, to get you fired." Doc. 123-1 at 19. Jones purportedly also "jerked some papers out of Chandler's hand" at some point. *Id*. at 16. Later that day, Chandler sent an email to Ferguson complaining about Jones. Doc. 123-4 at 15. In the e-mail, Chandler summarized how Jones treated her during the CORE team meeting, stating that Jones was "very rude and hateful" to Chandler and "snatched" papers out of her hand, which Chandler believed to be Jones "retaliating against [her] for reporting her racially discriminatory behavior at [VOASE], and her creating a racially hostile work environment." Doc. 123-4 at 15. Allegedly, the notice of Jones's deposition

in *Chandler I*—which Chandler's lawyer issued to Jones three days before the CORE team meeting—also motivated Jones's conduct. *See id.* at 123-1 at 17; doc. 140-9 at 20.

Sometime thereafter, O'Neal interviewed some of the witnesses to the incident. Doc. 123-4 at 20. O'Neal's investigation confirmed that Jones and Chandler disagreed over an issue and that, according to Manno, "neither of them was very respectful to each other." *Id.* O'Neal's investigation also revealed Manno's and Chandler's concerns about Jones's treatment of the staff. *Id* at 20-21. Specifically, Manno explained that Jones intimidated the staff and made "it difficult for everyone to get alon[g] and operate as a team." *Id.* at. 20. Chandler's statements to O'Neal mirrored Manno's complaint about Jones treating the staff unprofessionally. *Id.* at 21. In addition, Chandler also purportedly complained to O'Neal during the interview about retaliation, discrimination, and a hostile work environment at "VOA." Doc. 140-9 at 21.

At the end of her investigation, O'Neal concluded that Jones "need[ed] to be reminded of her position in the company and the expectation of team work for the best interest of the people we serve and staff." Doc. 123-4 at 21. O'Neal also recommended that all the supervisors (including Jones and Chandler) undergo training in effective communication, receive counseling on professionalism, and meet with Calvert to "establish team work." *Id.* As a result of O'Neal's

investigation, Ferguson issued a written reprimand to Jones. *Id*. at 2, 30-31. As for Chandler, while Ferguson initially planned to issue a similar written reprimand, VOASE instead opted to discharge Chandler after a series of events that occurred in the two week period following the CORE team meeting. Doc. 123-4 at 8-10.

      *2. Other events leading up to Chandler's discharge*

      Ferguson explains that between March and May 2011, she personally observed and received complaints regarding Chandler's insubordinate behavior, and believed "there was credible evidence that Chandler had misused [VOASE] funds." Doc. 123-4 at 10. Specifically, in March 2011, Ferguson "learned that the staff at the Florence office was stocking the staff refrigerator with sodas, bottled water, and luncheon meat with [VOASE] funds" and directed Calvert to "inform the staff that they were not allowed to charge those items to [VOASE]." *Id*. at 4. Calvert subsequently contacted Ferguson to inform her that, when Manno relayed Ferguson's message to Chandler, "Chandler became very upset . . . and told Manno . . . that 'there was going to be trouble.'" *Id*. at 4-5. Chandler denies that she purchased the items using VOASE funds. Doc. 140-9 at 18. Then, on April 26, 2011, while working at the Florence office, Ferguson heard a "verbal exchange occurring between Chandler and her direct supervisor, Manno." Doc. 123-4 at 7. During the exchange, "Chandler's voice became louder and louder until she was yelling at Manno." *Id*. Ferguson immediately met with Chandler and Manno and

told Chandler that "her conduct was unprofessional and that she was being insubordinate." *Id*. Despite Ferguson's intervention, Chandler purportedly "continued to talk over [her and Manno], and she told Manno, 'You can't tell the truth,'" which Ferguson understood as Chandler calling Manno a liar. *Id*. Ferguson believed that "Chandler's demeanor . . . was one of intimidation, hostility, and . . . disrespect" toward Ferguson and Manno. *Id*. While Chandler admits that she told Manno "that she was not telling the truth," Chandler denies that she yelled at Manno and claims instead that Manno yelled at Chandler, stating that Chandler "needed to be stopped," "she was going to get fired," and Manno "was going to retaliate against" Chandler. Doc. 140-9 at 23-24. Allegedly, Ferguson also yelled at Chandler, told Chandler she needed to be stopped, that she was going to get fired, and that Ferguson "was going to retaliate against" her. *Id*.

On May 2, 2011, Jones emailed Ferguson to inform her that "Chandler made threatening and hostile remarks about Jones to other staff." Doc. 123-4 at 8. The next day, Manno reported to O'Neal that she suspected "Chandler had purchased groceries for her personal consumption using her [VOASE] credit card." *Id*. at 9. In particular, Chandler submitted $589.55 worth of grocery receipts that Chandler marked with "#63" to indicate that she purchased the groceries for "house number 63." *Id*. Because Manno thought the amount was unusually high, she visited house number 63 to compare the food in the house with the receipts. *Id*. But, Manno "did

not find many of the grocery items appearing on the receipts." *Id.* O'Neal verbally relayed this information to Ferguson on the same day. Doc. 123-5 at 9. Finally, Ferguson received a report from O'Neal that Acklin complained that Chandler "corrected [Manno] on several occasions in front of everyone" at a meeting, *id.* at 16, and Acklin reported to Ferguson and O'Neal that Chandler "made changes to the medication administration record" of a client in violation of company protocol, docs. 123-4 at 8; 123-5 at 8. Chandler denies all of these events. *See* doc. 140-9 at 20, 24-25, 26.

Based on all of these incidents, Ferguson made the decision to discharge Chandler, and Manno wrote the letter explaining that Chandler was being discharged because she "displayed insubordinate behavior with [her] supervisors" in "several recent meetings," "intimidated other employees," and "misrepresented material facts to employees." Doc. 123-4 at 10, 32. Although Chandler admits that she "[doesn't] know who made" the decision to discharge her, doc. 123-1 at 28, Chandler seemingly believes Jones played a role in the decision and that Jones, Manno, and Ferguson told Chandler before her discharge that they were going to "get [her] fired for reporting and complaining about the racial discrimination and racially hostile work environment at VOASE," doc. 140-9 at 18. Chandler also believes that the decision to discharge her was based on racial animus. *See* doc. 28 at 22-23.

### 3. Chandler's additional allegations of unfair employment practices

As for her retaliation claims, while Chandler clarifies in her response to the summary judgment motion that she is asserting a discriminatory discharge claim, Chandler explains in her declaration that she believes that Manno denied her request for time off in April 2011 in retaliation for Chandler providing a deposition in *Chandler I* on April 6, 2011. *See* doc. 123-1 at 28. Allegedly, Chandler "hadn't had any issues" obtaining time off prior to her *Chandler I* deposition. *Id.* Furthermore, Chandler describes that beginning in March 2011, Jones denied Chandler use of company vans that Chandler needed to take her clients to doctors' appointments, which Chandler believes was also a form of retaliation. Doc. 123-1 at 20-21.

To further support her discrimination and harassment claims, Chandler claims that sometime in April 2011 "Manno harassed [her] based on [her] race and discriminated against [her] . . . [by writing] up [Chandler] . . . for one of the [h]ouses [she] supervised not being clean" when the house actually was clean. Doc. 140-9 at 16. Additionally, Chandler explained that Manno and Jones "subjected [her] to unlawful harassment" by frequently "undermin[ing] her authority and telling . . . the [employees] that [Chandler] supervise[d] . . . they couldn't trust [her]," "checking behind [her] if [she] switched the workers from one home to another," and "basically, making [her] job hard to do." Doc. 123-1 at

30. Chandler also believes that Jones's decision to deny Chandler use of the vans was a form of harassment, in addition to VOASE "depleting" certain credit cards that Chandler used to buy groceries. *Id*. at 30-31. Meanwhile, Chandler's fellow House Manager (Wendy English, who is Caucasian) purportedly had full access to the vans, and "her cards were working fine." *Id*. at 20, 31. Chandler also makes general assertions that O'Neal, Manno, Calvert, and Ferguson "failed to perform [their] duties and responsibilities and failed to follow VOASE's policies and procedures." *Id*. at 3-4.[4] Finally, Chandler makes general assertions that Ferguson and Calvert "discriminated against African-American employees," "did not like African-Americans," favored "white employees over black employees" and retaliated against Chandler for her complaints by "singling out" Chandler and denying her use of the company vans and credit cards. Doc. 140-17 at 3-5.

### III. ANALYSIS

In light of the court's May 19, 2014 order, the only remaining claims are: (1) the Section 1981 retaliation and discrimination claims based on employment actions at VOANA from November 2, 2010 to December 31, 2010; (2) the Section 1981 and Title VII hostile work environment claims for conduct at VOANA during the same time period; and (3) the Section 1981 and Title VII discrimination, retaliation, and hostile work environment claims for conduct at VOASE from

---

[4] Chandler makes the same allegation as to an individual she refers to as "Johnson." Doc. 140-9 at 4. It is not clear to whom Chandler is referring.

January 1, 2011 until Chandler's termination on May 4, 2011. As for the claims based on employment actions at VOANA, Defendants contend that Chandler's claims are all based on employment actions that occurred prior to November 2, 2010 (which Chandler already litigated in *Chandler I*), and that Chandler therefore has not established her *prima facie* case in this action. The court agrees that the claims against VOANA fail at the *prima facie* level and will address these claims first. The court will then turn to Chandler's claims based on employment actions at VOASE. While the court agrees that summary judgment is due with respect to the hostile work environment and discrimination claims against VOASE, the court concludes that the retaliation claims against VOASE survive summary judgment. Finally, while Chandler claims that VOASE is liable for VOANA's allegedly unlawful actions under successor liability principles, the court need not reach this issue since none of the claims against VOANA survive summary judgment.

### A. Claims against VOANA: Section 1981 discrimination and retaliation

With respect to Chandler's Section 1981 discrimination and retaliation claims for alleged unlawful employment actions at VOANA from November 2, 2010 until VOANA ceased operations on December 31, 2010, Chandler admitted during her deposition that she is not basing her action on "any type of discipline or adverse employment action that . . . [VOANA] imposed on [her] that [she] didn't raise in [*Chandler I*]." Doc. 123-1 at 14. And indeed, the court has reviewed the

evidentiary submissions carefully and finds no evidence of any adverse employment actions occurring at VOANA from November 2, 2010 until December 31, 2010. Therefore, because Chandler's discrimination and retaliation claims require a showing that VOANA "took an adverse employment action against [her] on the basis of a protected personal characteristic," *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1230 (11th Cir. 2001) (citation, internal quotation marks, and footnote omitted) (race discrimination); *see also Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993) (retaliation), the court concludes that Chandler's discrimination and retaliation claims against VOANA fail at the *prima facie* level.

### B. Claims against VOANA: Title VII and Section 1981 hostile work environment

Chandler's hostile work environment claims against VOANA also fail at the *prima facie* level. As an initial matter, the court notes a discrepancy in Chandler's testimony regarding which of her supervisors at VOANA subjected her to racial harassment. On the one hand, Chandler suggested in her deposition that her claims are based solely on Stephenson's conduct, *see* doc. 123-1 at 45—meaning that no harassing conduct occurred during the relevant time period because Stephenson left VOANA in March 2010. On the other hand, Chandler states in her April 15, 2015 declaration that Jones also created a hostile work environment for Chandler at VOANA after Stephenson resigned (and presumably until December 31, 2010). Doc. 140-9 at 3. Even accepting that Chandler's claims are based on Jones's

conduct at VOANA after November 2, 2010, Chandler has not demonstrated that Jones's alleged harassing conduct was based on Chandler's race. In this Circuit, it is a "bedrock principle that not all objectionable conduct or language amounts to discrimination under Title VII." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1297 (11th Cir. 2012) (quoting *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 809 (11th Cir. 2010) (en banc)) (internal quotation marks omitted). Rather, "only conduct that is 'based on' a protected category, such as race, may be considered in a hostile work environment analysis." *Id.*

Here, while Chandler asserts that Jones "would unload verbal and visual racial abuse against [Chandler] constantly and on almost a daily, if not daily, basis," doc. 140-9 at 3, Chandler admits that she never heard Jones use any racial slurs, doc. 123-1 at 8. Even accepting that Jones "talked down" to Chandler and used "code words like 'back-talking,' 'boss,' and 'attitude' to refer to black employees," doc. 140-9 at 2, the court cannot make the inference that Chandler asks—that is, to conclude that "[Jones] meant 'nigger' when she used those words" *id.* at 3—without any evidence demonstrating that Jones's alleged conduct was racially motivated. *See Hall v. Dekalb Cnty. Gov't*, 503 F. App'x 781, 791 (11th Cir. 2013) (plaintiff must provide "specific examples of racial harassment [rather than] . . . conclusory, unsupported allegations"). Significantly, the Eleventh Circuit has found race-based harassing conduct only where there was evidence that the

employer and coworkers used racial slurs or otherwise exhibited conduct that, given the social context, could be characterized as "racially motivated." *See Adams v. Austal*, U.S.A., L.L.C., 754 F.3d 1240, 1246 (11th Cir. 2014) (repetitive use of racial slurs toward black employees constitutes harassing conduct); *Jones v. UPS*, 683 F.3d at 1298 (while coworkers did not use a racial slur overtly, they placed bananas on a black employee's car on numerous occasions, which the court held could be characterized as "racially motivated" given the link between bananas and the racial slur "monkey"). In this case, the court finds no link between Jones's conduct—the use of words like "back-talking," "boss," and "attitude," and the use of hand sanitizer—and a racial slur. While this evidence perhaps establishes that Jones was rude and berating, Chandler nonetheless "does not show, beyond speculation, how this harassment was based on her race." *Wells v. Gen. Dynamics Info. Tech. Inc.*, 571 F. App'x 732, 736 (11th Cir. 2014) (instance where supervisor "berated [plaintiff] in front of other employees" insufficient to demonstrate race-based harassment where plaintiff presented no evidence that supervisor conduct was based on plaintiff's race); *see also Smithers v. Wynne*, 319 F. App'x 755, 758 (11th Cir. 2008) (supervisor's negative comments do not demonstrate harassing conduct where plaintiff "had no evidence to prove that the harassment was based upon a protected characteristic").

Ultimately, similar to the Eleventh Circuit's findings in *Chandler I*, "Chandler provides no context for the majority of the statements to which she refers; we don't know when or where they were made, and we don't even know whether Chandler herself heard them firsthand or whether someone told her about them at a later point. It is inappropriate for a court to rely on evidence of alleged incidents that are purely speculative or statements where there is insufficient information as to when the statements were made, how knowledge of them was acquired, and when [the plaintiff] was informed of them (if she was)." *Chandler v. Volunteers of Am., N. Alabama, Inc.*, 598 F. App'x 655, 667-68 (11th Cir. 2015) (citation and internal quotation marks omitted) (alteration in original). Therefore, because the court has no evidence before it that Jones's conduct was "racially motivated," Chandler's claims of a hostile work environment at VOANA fail at the *prima facie* level. *See Jones v. UPS*, 683 F.3d at 1297.

For the reasons above, all of Chandler's claims against VOANA (Counts I, III, and V) do not survive summary judgment.

### C. Claims against VOASE

As to the remaining claims for hostile work environment, race discrimination, and retaliation based on employment actions at VOASE, VOASE claims that Chandler cannot establish her *prima facie* case. Alternatively, for the discrimination and retaliation claims, VOASE contends that Chandler cannot rebut

VOASE's reasons for the adverse employment action. The court addresses the hostile work environment, discrimination, and retaliation claims in turn.

### 1. Title VII and Section 1981 hostile work environment

Aside from Jones's use of "code words" and hand sanitizer (which Jones also continued to use at VOASE and which the court concludes are not racially motivated), the only specific incidences of allegedly harassing conduct that Chandler points to are certain actions by Jones and Manno.[5] Specifically, Manno purportedly "harassed [Chandler] based on [her] race and discriminated against [her] . . . [by writing] up [Chandler] . . . for one of the [h]ouses [she] supervised not being clean" when the house actually was clean. Doc. 140-9 at 16. Additionally, Chandler explains that Manno and Jones "subjected [her] to unlawful harassment" by frequently "undermin[ing] her authority and telling . . . the [employees] that [Chandler] supervise[d] . . . they couldn't trust [her]," "checking behind [her] if [she] switched the workers from one home to another," and "basically, making [her] job hard to do." Doc. 123-1 at 30. Chandler also believes that Jones's denial of the work vans was a form of harassment, in addition to VOASE "depleting" certain credit cards that Chandler used to buy groceries for the homes she managed. *Id.* at 30-31. Accepting as true that the so-called unclean

---

[5] In general, throughout her evidentiary submissions, Chandler makes conclusory allegations that Jones, Manno, Ferguson and Calvert discriminated against her, retaliated against her, and harassed her because they purportedly "did not like African-Americans," "favored white employees over black employees," or were targeting Chandler because of her complaints of unlawful employment practices. *See generally* docs. 140-9, 140-17. The court will not rely on any of these allegations because "conclusory, unsupported allegations are insufficient to survive a motion for summary judgment." *Hall*, 503 F. App'x at 791.

house was actually clean, that Jones and Manno made Chandler's job "hard to do," and that Chandler could not use the credit cards and vans, Chandler failed to present any evidence that these acts were racially motivated. As the court explained above, Chandler must provide specific examples of conduct and demonstrate "beyond speculation, how this [alleged] harassment was based on her race." *Wells*, 571 F. App'x  at 736. At best, the evidence that Chandler has presented[6] demonstrates her "deteriorating relationship with her supervisor[s]," which the Eleventh Circuit has held is insufficient to demonstrate that allegedly harassing conduct is race-based. *Id*. For these reasons, the court concludes that the hostile work environment claims against VOASE do not survive summary judgment. *See Jones v. UPS*, 683 F.3d at 1297.

### 2. Title VII and Section 1981 discrimination

Chandler clarifies in her response to the summary judgment motion that her race discrimination claims are based on her discharge. Doc. 139 at 22. To establish

---

[6] Chandler relies primarily on the testimony of Shirley Webb, Latina Fuqua, and Amy Armstead—other employees who also believe that Jones's actions were harassing conduct. Armstead agrees that Jones used the "code words" to mean "nigger" and used facial expressions toward her that were demeaning and degrading. Doc. 140-1 at 3. Fuqua believes the code words were "another way of saying the word, blacks." Doc. 140-2 at 4. Fuqua, who worked under Chandler's supervision, also explains that Jones told Fuqua that she should not listen to Chandler's orders and instead listen to Jones because Jones "was the 'boss.'" *Id*. Fuqua took this as Jones "undercut[ting] Chandler's ability to do her job." *Id*.

As for Shirley Webb's testimony, Chandler asserts in her declaration that Webb testified that "Jones would tell employees working under [Chandler's] supervision to disregard" Chandler's orders. Doc. 140-9 at 6. Jones purportedly "told Shirley Webb that she could not trust" Chandler and to "write down things about Chandler." *Id*. at 6. Either according to Webb, or according to Chandler, Jones did this because Chandler is black. *Id*. According to Chandler, Webb also felt that "she was working in a hostile work environment based on race." *Id*.

Defendants have moved to strike this evidence. Doc. 144. Even if the court considers this evidence, it has no effect on the court's decision because the evidence does not establish (beyond conclusory allegations and speculation) that Jones's actions were based on Chandler's race. *See Wells*, 571 F. App'x at 736.

her *prima facie* case, Chandler must show that (1) she belongs to a protected group, (2) she was subjected to adverse job action, (3) her employer treated similarly situated employees outside her classification more favorably, and (4) she was qualified to do the job. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973)). The court agrees with VOASE that Chandler's *prima facie* case fails since she has not identified a similarly situated comparator that was "involved in or accused of the same or similar conduct" as Chandler, but that was not discharged. *Holifield,* 115 F.3d at 1562. Nonetheless, Chandler contends this claim should survive summary judgment because she has purportedly presented sufficient circumstantial evidence to create a triable issue of fact concerning VOASE's discriminatory intent. Doc. 139 at 23 n. 13. Chandler is generally correct that establishing the *prima facie* elements "is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case . . . [and] the plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011); *see also Connelly v. Metropolitan Atlanta Rapid Transit Authority*, 764 F.3d 1358, 1364 (11th Cir. 2014). Rather, "where the plaintiff presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent—the essential element of a claim for

discrimination—the plaintiff will always survive summary judgment." *Jones v. Water Works Bd. of the City of Birmingham*, No. 2:10-CV-1323-AKK, 2012 WL 2856651, at *10 (N.D. Ala. July 5, 2012) (citing *Lockheed-Martin*, 644 F.3d at 1328) (internal quotation marks omitted). As this court stated in *Jones*, "a triable issue of fact exists if the record, viewed in the light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination." *Jones*, 2012 WL 2856651, at *10 (citation and internal quotation marks omitted).

The problem for Chandler, however, is that she does not brief this issue particularly well and simply dropped a footnote with the conclusory allegations that "[t]he record would support an inference that Caucasian supervisors Jones, Manno, and Calvert, at VOASE had pronounced animus." Doc. 139 at 23 n. 13. Chandler then cites generally to hundreds of pages of documents, most of which she failed to include in her evidentiary submissions. *See id*. As this court and the Eleventh Circuit have reiterated numerous times, it is not the court's job "initially to comb through the record, identify the facts supporting the plaintiff's legal position, and apply them to the law—all without any guidance from counsel." *Chandler I*, 598 F. App'x at 663. Nonetheless, the court has done its best to decipher all of Chandler's arguments and reviewed the record carefully to ensure fair adjudication of Chandler's claims. In that respect, as evidence of this

convincing mosaic (as far as the court can discern), Chandler seemingly points to her inability to use the company vans and credit cards while a Caucasian employee (Wendy English) was able to use them, and various issues which she believes demonstrate pretext. Doc. 139 at 22, 23 n. 13, 26-33. The court disagrees with Chandler that this evidence presents a convincing mosaic of discrimination to allow her discriminatory discharge claim to survive summary judgment.

a. Denial of vans and credit cards as a "convincing mosaic" of discrimination

The *Lockheed-Martin* decision is instructive regarding what sort of evidence is sufficient to create a "convincing mosaic" of discrimination. 644 F.3d at 1324-28. In that case, *Lockheed-Martin* discharged the plaintiff, who was Caucasian, was discharged for forwarding a racially insensitive "joke" email that contained offensive stereotypes about African-Americans. *Id.* at 1324. The plaintiff later learned, however, that the employer failed to discharge two African-American employees who forwarded similar racist "joke" emails. *Id.* at 1324. But, because the African-American employees (unlike the plaintiff) were not supervisors, they could not serve as comparators for the purposes of establishing a *prima facie* case. *Id.* at 1326. Nonetheless, the plaintiff produced evidence specifically demonstrating that the employer discharged other Caucasian employees (who were not supervisors) for forwarding the same email—which suggested that the real reason for the disparate treatment was race rather than the plaintiff's status as a

supervisor. *Id.* at 1341-44. Further, the employer's disciplinary review committee explicitly considered race in its disciplinary decisions by using a spreadsheet that listed the employees' race, which the court concluded "yields an unavoidable inference that the employee's race impacted the discipline determination." *Id.* at 1346 (citing *Williams v. Lindenwood Univ.*, 288 F.3d 349, 356 (8th Cir. 2002) ("[I]njecting racial language at all into the decision-making process creates the inference that race had *something* to do with the decision-making process.")). Finally, the plaintiff offered compelling evidence of his employer's motive to treat white employees less favorably in light of media accusations that the employer was not committed to curbing "white-on-black" racism. *Id.* at 1234-35. Based on all of this evidence, the court concluded that "the record contains sufficient circumstantial evidence from which a jury could infer that [the employer] displayed a racially discriminatory animus toward [the plaintiff] when it fired him." *Id.* at 1236-37.

Here, as in *Connelly*, the "evidence of racial discrimination . . . is considerably weaker than the evidence presented in [*Lockheed-Martin*], and it is insufficient to create a reasonable inference of racial discrimination." 764 F.3d at 1365. Significantly, Chandler has presented no evidence that VOASE disciplined any Caucasian employees less strictly for similar conduct, that it expressly injected race into its disciplinary decisions, or that it had a motive for treating African-

American employees less favorably than Caucasian employees. Furthermore, Chandler's allegations regarding her inability to access company vans and credit cards miss the mark because the relevant inquiry relates to VOASE's decision to discharge Chandler—not the decision to deny her use of the vans. In that regard, Chandler has not "connected [her] race to [VOASE'S] decision" to discharge her. *Connor v. Bell Microproducts-Future Tech, Inc.*, 492 F. App'x 963, 967 n. 1 (11th Cir. 2012) (declining to apply *Lockheed-Martin* where plaintiff did not "present sufficient evidence tying [the employer's] decisions to [the plaintiff's]" race).

<u>b. Pretext as a "convincing mosaic" of discrimination</u>

Furthermore, as to Chandler's contentions regarding pretext, Chandler is generally correct that evidence of pretext can establish a "convincing mosaic" of discrimination. *See Jones v. Water Works*, 2012 WL 2856651, at *10. However, the court finds no evidence of pretext as to Ferguson's assertion that she personally witnessed Chandler yelling at Manno, talking over both Manno and Ferguson, and stating that Manno "could not tell the truth." Doc. 123-4 at 7, 32. Chandler's only response as to this proffered reason is that "Chandler did not do the things that Ferguson accused her of doing." Doc. 139 at 32. This position is unavailing because—aside from conclusory allegations in her declarations—Chandler has not presented any evidence "either directly . . . persuading the court that a discriminatory reason more likely motivated the [discharge] or indirectly by

showing that [Ferguson's] proffered explanation is unworthy of credence." *Carter*

*v. City of Miami*, 870 F.2d 578, 584 (11th Cir. 1989) ("[C]onclusory allegations of

discrimination, without more, are not sufficient to raise an inference of pretext or

intentional discrimination where [an employer] has offered . . . evidence of

legitimate, non-discriminatory reasons for its actions.") (citation and internal

quotation marks omitted) (alterations in original)).

For these reasons, because Chandler has not established a *prima facie* case

of discrimination or presented a "convincing mosaic" of race discrimination, the

court will grant summary judgment with respect to the race discrimination claims

against VOASE.

### 3. *Title VII and Section 1981 retaliation*

The court reaches a different conclusion with respect to Chandler's

retaliation claims. Chandler clarifies in her response to Defendants' motion that

she is basing her retaliation claims on her belief that VOASE discharged her in

retliation for filing suit in *Chandler I*, and in retaliation for her internal complaints

at VOASE. Doc. 139 at 18-19. Although Chandler is seemingly relying on direct

evidence of retaliation, *see* doc. 140-9 at 23-24 (Chandler's contention that the

decision-makers told her they "w[ere] going to retaliate against" her), the parties

seem to agree that the burden-shifting framework set forth in *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792 (1973) applies to this case.[7] The court notes that, in this Circuit, "[i]f a plaintiff can provide direct evidence of discriminatory intent, then the employer must prove by a preponderance of the evidence that the same employment decision would have been made in the absence of the discriminatory intent." *Id*. In light of Chandler's direct evidence of retaliation, and because VOASE has not attempted to disprove this evidence by a preponderance of evidence, the court concludes that a jury should decide whether VOASE has met this "preponderance of the evidence" standard. Nonetheless, because Chandler provides this direct evidence through a post-deposition declaration, and in light of Chandler's concession that this is a case involving a burden-shifting analysis, the court will address the parties' arguments under the *McDonnell Douglas* framework as well. Under this approach, a plaintiff must first establish a *prima facie* case of retaliation by showing that (1) she engaged in a statutorily protected activity, (2) the defendant subjected her to an adverse employment decision, and (3) a causal relationship exists between the adverse employment decision and the statutorily protected activity. *Goldsmith*, 996 F.2d at 1163. If the plaintiff can establish a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate non-retaliatory explanation for the adverse employment decision. *Id*. If the

---

[7] Direct evidence is "evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Standard v. A.B.E.L. Servs.,Inc.*, 161 F.3d 1318, 1330 (11th Cir.1998).

defendant meets this burden, the plaintiff must prove "by a preponderance of the evidence that the reasons offered by the defendant are pretextual." *Id.*

> a. Chandler's *prima facie* case

The only disputed element of Chandler's *prima facie* case is the causal connection between her termination and her protected activity. To establish the requisite causal connection, Chandler "need only show that the protected activity and the adverse action were not wholly unrelated." *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999) (citation and internal quotation marks omitted). In general, Chandler can meet this burden by demonstrating "close temporal proximity" between the protected activity and the adverse employment action. *Brungart*, 231 F.3d at 799. In the absence of other evidence of causation, the temporal relationship must be "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). As such, a retaliation claim fails "if there is a substantial delay between the protected [activity] and the adverse action in the absence of other evidence tending to show causation." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004); *see also Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (by itself, a three to four month time lapse between protected activity and adverse employment action cannot establish causation); *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) (a seven week time lapse establishes causation based on temporal proximity alone).

Applying these principles, the court concludes that Chandler has demonstrated the necessary temporal proximity to establish causation. It is undisputed that Ferguson attended Chandler's deposition in *Chandler I* on April 6, 2011—approximately four weeks prior to Chandler's discharge on May 4, 2011. Doc. 123-4 at 5. Although the deposition was technically related to Chandler's claims in *Chandler I*, Chandler claims that she testified regarding the alleged unlawful employment practices at VOASE as well. Doc. 140-9 at 21. Furthermore, Chandler undisputedly complained to Ferguson by e-mail about the alleged hostile work environment and discrimination approximately three weeks prior to her discharge. Doc. 123-4 at 15. The court concludes that such temporal proximity (three to four weeks) is sufficient to establish a causal connection. *See Farley*, 197 F.3d at 1337.

### b. Whether the grounds for Chandler's discharge are pretextual

Because Chandler has established her *prima facie* case, the burden shifts to VOASE to articulate a legitimate non-retaliatory reason for Chandler's discharge. The court concludes that VOASE has met its "exceedingly light" burden by articulating a reason that would motivate a reasonable employer based on Ferguson's account of Chandler's allegedly insubordinate conduct toward Manno. *See Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994). While Chandler contends VOASE's reasons are not legitimate because they are weak and

overly subjective, VOASE's burden at this stage of the inquiry is to "merely proffer non-[discrimination] based reasons, not prove them." *Id*. Furthermore, while discharging an employee for insubordination perhaps involves a subjective evaluation, as Chandler herself points out, even an employer's subjective reasons are "legally sufficient . . . if the [employer] articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." *Chapman v. AI Transp.*, 229 F.3d 1012, 1034 (11th Cir. 2000). VOASE has met this standard in light of Ferguson's assertion that she directly observed Chandler yelling at Manno, talking over both Manno and Ferguson, and stating that Manno "could not tell the truth," and in light of the multiple witness reports of Chandler's behavior at the CORE team meeting.[8]

To rebut this reason, Chandler must present evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006) (citation and internal quotation marks omitted). Viewing the facts in the light most favorable to Chandler, the court concludes that there is sufficient evidence of pretext. As an

---

[8] The factual basis for the other grounds that Manno refers to in the termination letter—intimidation of other employees and misrepresentation of material facts to other employees—is not clear from the record. The court assumes the "intimidation" reference is related to Jones's May 2, 2011 complaint that "Chandler made threatening and hostile remarks about Jones to other staff." Doc. 123-4 at 8. The misrepresentation of facts incident perhaps refers to the allegation that Chandler misused VOASE funds to purchase grocery items for personal use, but this is not clear entirely clear from the record. *See id*. at 9. Therefore, the court does not rely on these contentions in its analysis.

initial matter, the close temporal proximity between Chandler's discharge and her deposition in *Chandler I* and internal complaints to Ferguson is evidence of pretext. *Id*. While the close temporal proximity is "probably insufficient to establish pretext by itself," *id*., the evidence of temporal proximity in this case does not stand alone. It is bolstered by Chandler's direct evidence of retaliation—i.e., her contention that Ferguson and Manno told her that they "w[ere] going to retaliate against" her. Doc. 140-9 at 23-24. Moreover, Chandler's contentions are also bolstered by inconsistencies in the record regarding the grounds for Chandler's termination. Specifically, Ferguson points to an incident where Acklin complained that Chandler allegedly violated a company policy related to updating the medical records for clients. Doc. 123-4 at 8. While Ferguson and O'Neal assert that Acklin reported Chandler's alleged violation prior to Chandler's termination on May 4, 2011, docs. 123-4 at 8; 123-5 at 8, VOASE's own evidentiary submissions show that Acklin only discovered Chandler's alleged violation *after* Chandler's discharge, doc. 123-5 at 17. In fact, Acklin sent an email to O'Neal on May 6, 2011 that plainly states that Acklin "found out about the information [that Chandler allegedly updated improperly] when looking over the medical books on May 5, 2011." *Id*. While the court is uncertain of the cause of the discrepancy, the inconsistencies in VOASE's story could persuade a trier of fact that VOASE is changing its story and is therefore unworthy of credence. *Hurlbert*, 439 F.3d at

1298 (employer's human resources director stated that the grounds for plaintiff's discharge was "borderline insubordinate behavior," which the court found to be evidence of pretext where "no charge of insubordination appears in the . . . termination documents").  A jury could interpret these discrepancies to mean that VOASE manufactured reasons to cover up an unlawful termination. *See id*. In light of this evidence, the court concludes that a jury should decide whether VOASE discharged Chandler for legitimate reasons, or alternatively, whether the reasons VOASE articulated were pretext for retaliation. The court will therefore deny summary judgment as to the retaliation claims.[9]

## V. CONCLUSION

For the reasons above, Chandler's Section 1981 and Title VII retaliation claims against VOASE (Count VI) survive summary judgment. Chandler's claims of hostile work environment, race discrimination, and retaliation against VOANA and her hostile work environment and race discrimination claims against VOASE

---

[9] The final matter before the court is Chandler's contention that, when the claims that survive summary judgment go to trial, this court should instruct the jury "on spoliation of evidence which raises a presumption against the spoliator." Doc. 139 at 10. Chandler believes this is necessary because Defendants have purportedly "systematically destroyed, withheld, or failed to preserve evidence that would have been useful to Chandler in this litigation." *Id*. at 11. In support of this contention, Chandler points to "several instances of *possible* spoliation," without presenting any actual evidence. *Id*. at 11 (emphasis added). For example, because Defendants purportedly failed to produce certain emails from the period Chandler worked at VOANA, Chandler asks the court to accept that "[i]t is a viable, logical inference that these emails were prejudicial to" Defendants. *Id*. at 12 n. 4. Furthermore, while Chandler is correct that this court previously sanctioned Defendants for their failure to timely produce certain documents relevant to Chandler's claims, there was no destruction of evidence in that incident because Defendants indeed produced the documents (albeit in an untimely fashion). *See* doc. 84. Absent any evidence beyond speculation and conclusory allegations that Defendants destroyed evidence relevant to Chandler's claims, the court declines to make any ruling on this issue.

(Counts I, II, III, IV, and V) do not survive summary judgment. The court will enter an order consistent with this opinion.

       **DONE** the 27th day of August, 2015.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE
